UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
MEDITERRANEAN SHIPPING COMPANY
(USA) INC.,

                            *Plaintiff,*           Case No. 1:10-cv-09445-HBP

      *- against -*

WORLDWIDE FREIGHT SERVICES, INC.,
T/A UNITED AMERICAN LINE,

                           *Defendant.*
-----------------------------------------------------------x


## MEMORANDUM OF LAW IN SUPPORT
## TO PLAINTIFF'S MOTION FOR
## SUMMARY JUDGMENT


Carroll McNulty & Kull  LLC.
570 Lexington Avenue, 10th Floor
New York, New York  10022
(212) 252-0004

*Attorneys for Plaintiff*
MEDITERRANEAN SHIPPING COMPANY (USA) INC.


John A. Orzel
Lindsay A. Sakal

*Of Counsel*

## TABLE OF CONTENTS

Page Number

INTRODUCTION ............................................................... 1

PRELIMINARY STATEMENT ................................................. 1

STATEMENT OF FACTS ................................................... 1

*The Bill of Lading Contract* ............................................ 2

*Bill of Lading MSCUNQ619164 New York/ Al Aqaba, Jordan* ..................... 6

*Bill of Lading MSCULB483885 Baltimore/ Mombasa, Kenya* ..................... 7

LEGAL ARGUMENT ....................................................... 8

    *A. Legal Standard for Summary Judgment* ............................... 8

    *B. The Shipper Named On The Bill Of Lading*
       *Is Responsible For Paying Demurrage* ............................. 10

    *C. Defendant Has No Valid Defense To Payment*
       *Of The Tariff Demurrage Amount* ................................ 13

    *D. MSC Is Entitled To Recover Legal Fees And Expenses* ................. 14

CONCLUSION ............................................................. 16

## INTRODUCTION

Plaintiff, MEDITERRANEAN SHIPPING COMPANY (USA) INC., by its undersigned attorneys, Carroll, McNulty & Kull LLC., moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, against the defendant, WORLDWIDE FREIGHT SERVICES, INC., trading under the name of UNITED AMERICAN LINE.

## PRELIMINARY STATEMENT

Plaintiff, MEDITERRANEAN SHIPPING COMPANY (USA) INC., (hereinafter referred to as "MSC") issued two ocean bills of lading to the defendant, WORLDWIDE FREIGHT SERVICES, INC., trading under the name of UNITED AMERICAN LINE (hereinafter referred to as "United"), for the carriage of two 40-foot shipping containers from the United States to the posts of Al Aqaba, Jordan and Mombasa, Kenya. In breach of the contractual provisions of the bills of lading, United failed to have the two shipping containers cleared off the terminals at the ports of discharge and returned to MSC in the time allowed by MSC's tariff. As a result, both containers began accruing demurrage charges at an amount fixed by MSC's tariff. Despite due demand for payment, United has refused to pay the demurrage charges due and owing on the two containers.

## STATEMENT OF FACTS

The facts of this case are relatively simple. The plaintiff, Mediterranean Shipping Company (USA) Inc., is the United States agent for Mediterranean Shipping Company of Geneva S.A., a Swiss based common carrier of containerized cargo for hire, including cargo to and from the United States. *See Declaration in Support of Jorge Boose (hereinafter referred to "Boose Dec.")* *at* ¶4  Mediterranean Shipping Company (USA) Inc., as agent for Mediterranean Shipping

1

Company of Geneva S.A., will solicit cargo and then issue bills of lading to cover the carriage of that cargo from the United States to the place of destination. *Boose Dec. at ¶ 4* MSC will generally provide shippers with standardized shipping containers for use with shipments that are made in MSC's system. MSC will also track the movement of these containers to ensure that each container is being utilized to its fullest potential. *Boose Dec. at ¶¶ 4-7* MSC allows a set number of days in which shippers and receivers of cargo being carried by MSC may use MSC's container equipment free of charge. This free usage is referred to, in the industry, as "free-time." *Boose Dec. at ¶ 7*

In the case at bar, MSC contracted with the defendant, United, for MSC to carry two 40-foot, high cube shipping containers, one from the port of New York to the port of Al Aqaba, Jordan and one from the port of Baltimore, Maryland to the port of Mombasa, Kenya. In both instances, United booked the cargo with MSC, loaded the cargo into shipping containers provided by MSC, sealed the doors of the shipping containers and had the sealed shipping containers delivered to their respective ports of loading. *Boose Dec. ¶¶ 8-10; 12* Neither the NY/Al Aqaba nor the Baltimore/Mombasa shipment were cleared from the container terminal at the port of discharge within the free-time allowed by MSC's tariff governing container usage at the discharge ports. *Boose Dec. at ¶ 8*

### The Bill of Lading Contract

MSC carries containerized cargo pursuant to a standardized bill of lading contract that, when issued, will contain the particulars of the shipment as well as the terms and conditions governing the relationship. *Boose Dec. at ¶¶ 12 – 13 and Exhibit A* The terms and conditions of carriage appear on the back of the actual bill of lading form and are also available for download

at MSC's internet website and appear in MSC's tariff, that is required to be maintained by the Federal Maritime Commission. *Boose Dec. ¶ 13*

The name "United American" appears in the "SHIPPER" box on both bills of lading forms that are at issue in this matter. *Boose Dec. ¶¶ 16 and 18 and Exhibits B and E* The terms and conditions of the applicable bill of lading defines "Merchant" as including the "Shipper" listed on the bill of lading as well as any party acting on behalf of the owner or party entitled to claim possession of the goods being shipped:

> **Merchant**: includes the Shipper, Consignee, holder of this Bill of Lading, the receiver of the Goods and any Person owning, entitled to or claiming the possession of the Goods or of this Bill of Lading or anyone acting on behalf of this Person.

*Boose Dec. ¶ 14 and Exhibit A at Clause 1 "Definitions"*

Clause 2 of the terms and conditions of the bill of lading, entitled "Contracting Parties and Warranty" provides that the contract of carriage is between the "Carrier" (MSC) and the parties identified as the "Merchant." It further provides that the Merchant parties are jointly and severally liable to MSC for the payment of freight and for any other "undertakings, responsibilities and liabilities" undertaken by the Merchant in the contract. *Boose Dec. ¶ 15*

The bill of lading also provides that it is the Merchant's responsibility to clear the cargo from the terminal at the port of discharge and provides that the Merchant will pay any charges levied as a result of exceeding the free-time allowed by MSC. Clause 14 of the bill of lading further provides that the Merchant will indemnify MSC for any legal fees incurred in recovering the use of MSC's equipment:

## 14.   DESCRIPTION   OF   GOODS   AND   MERCHANT'S RESPONSIBILITY

******

3

14.6 The Merchant shall comply with all regulations or requirements of customs, port and other authorities, and shall bear and pay all duties, taxes, fines, imposts, expenses or losses (including, without prejudice to the generality of the foregoing Freight for any additional carriage undertaken), incurred or suffered by reason thereof, or by reason of any illegal, incorrect or insufficient declaration, marking, numbering or addressing of the Goods, and shall indemnify the Carrier in respect thereof, including reasonable legal expenses and costs.

14.7 If by order of the authorities at any place, Goods are detained and/or seized and/or a Container has to be opened for the Goods to be inspected for any reason whatsoever, including but not limited to for a breach or infringement of a trademark, patent or other intellectual property right, the Carrier will not be liable for any loss or damage whatsoever incurred as a result of any opening, unpacking, inspection, re-packing, detention, destruction or delay. The Carrier shall be entitled to recover from the Merchant all charges, fines, costs, losses and expenses, including reasonable legal expenses and costs resulting from such action, including but not limited to any detention, demurrage and storage charges for the Goods and/or the Container.

14.8 The Carrier allows a period of free time for the use of the Containers and other equipment in accordance with the Tariff and as advised by the local MSC agent at the Ports of Loading and Discharge. Free time commences from the day the Container and other equipment is collected by the Merchant or is discharged from the Vessel or is delivered to the Place of Delivery as the case may be. The Merchant is required and has the responsibility to return to a place nominated by the Carrier the Container and other equipment before or at the end of the free time allowed at the Port of Discharge or the Place of Delivery. Demurrage, per diem and detention charges will be levied and payable by the Merchant thereafter in accordance with the Tariff.

14.9 The Merchant shall redeliver, to a place nominated by the Carrier, the Containers and other equipment in like good order and condition, undamaged, empty, odour free, cleaned and with all fittings installed by the Merchant removed and without any rubbish, dunnage or other debris inside. The Merchant shall be liable to indemnify the Carrier for any and all costs incurred reinstating or replacing Containers and other equipment not returned in the condition as specified above, including the reasonable legal expenses and costs of recovering the costs incurred and interest thereon.

*Boose Dec. ¶ 15 and Exhibit A at Clause 14*

Clause 16.3 re-states that the Merchant parties are jointly and severally responsible for all charges that become due under the bill of lading:

### 16. FREIGHT AND CHARGES

\*       \*       \*       \*       \*

16.3 Every Person defined as "Merchant" in clause 1 shall be jointly and severally liable to the Carrier for the payment of all Freight and charges and for the performance of the obligations of each of them hereunder. Any Person engaged by the Merchant to perform forwarding services with respect to the Goods shall be considered to be exclusively the Merchant's agent for all purposes, and any payment of Freight to such Person shall not be considered payment to the Carrier in any event whatsoever. Failure of such third parties to pay any part of the Freight to the Carrier shall be considered a default by the Merchant in the payment of Freight.

*Boose Dec. ¶ 15 and Exhibit A at Clause 16*

Clause 20 of the bill of lading, entitled "Notification and Delivery," addresses the "Merchant's" obligation to accept delivery of the cargo at the end of the carriage, within the time provided by MSC's tariff. *Boose Dec. at ¶ 15 and Exhibit A at Clause 20.2* Clause 20 goes on to provide that the "Carrier" is entitled to indemnity from the "Merchant" for any costs associated with securing the return of its equipment, including attorney fees:

### 20. NOTIFICATION AND DELIVERY

20.1 Any mention in this Bill of Lading of parties to be notified of the arrival of the Goods is solely for information of the Carrier. Failure to give such notification shall not subject the Carrier to any liability nor relieve the Merchant of any obligation hereunder.

**20.2 The Merchant shall take delivery of the Goods within the time provided for in the Carrier's applicable Tariff or as otherwise agreed.** If the Merchant fails to do so, the Carrier may without notice unpack the Goods if packed in Containers and/or store the Goods ashore, afloat, in the open or under cover at the sole risk of the Merchant. Such storage shall constitute due delivery hereunder, and thereupon all liability whatsoever of the Carrier in respect of the Goods, including for

misdelivery or non-delivery, shall cease and the costs of such storage shall forthwith upon demand be paid by the Merchant to the Carrier.

20.3 If the Goods are unclaimed within a reasonable time or whenever in the Carrier's opinion the Goods are likely to deteriorate, decay or become worthless, or incur charges whether for storage or otherwise in excess of their value, the Carrier may at its discretion and without prejudice to any other rights which it may have against the Merchant, without notice and without any responsibility attaching to it, sell, abandon or otherwise dispose of the Goods at the sole risk and expense of the Merchant and apply any proceeds of sale in reduction of the sums due to the Carrier from the Merchant under or in connection with this Bill of Lading.

20.4 Refusal by the Merchant to take delivery of the Goods in accordance with the terms of this clause and/or to mitigate any loss or damage thereto shall constitute an absolute waiver and abandonment by the Merchant to the Carrier of any claim whatsoever relating to the Goods or the carriage thereof. **The Carrier shall be entitled to an indemnity from the Merchant for all costs whatsoever incurred, including legal costs, for the cleaning and disposal of Goods refused and/or abandoned by the Merchant.**

*Boose Dec. ¶ 16 and Exhibit A at Clause 20 (Emphasis added)*

It is MSC's position that the bill of lading contract obligates the "Merchant" parties to take delivery and return MSC's equipment at the port of discharge within the allowed free-time. If the "Merchant" does not return MSC's equipment within the agreed time, then the "Merchant" parties are jointly and severally liable to MSC for demurrage, as provided by the tariff and for any expenses associated with MSC obtaining the return of its equipment, including legal fees.

### Bill of Lading MSCUNQ619164 New York/ Al Aqaba Jordan

On or about August 16, 2011, MSC and United entered into a bill of lading contract pursuant to which MSC agreed to carry one 40-foot, high-cubed, shipping container from the port of New York, New York to the port of Al Aqaba, Jordan. The agreement was memorialized in MSC bill of lading number MSCUNQ619164. *Boose Dec. at ¶ 17 and Exhibit B*  The cargo,

which the "Shipper" (defendant, United) described as "I UNPACKED OR UNPACKAGED OF LOT OF PLYWOOD" was loaded into container number TTNU9727365.  *Boose Dec. at ¶ 17 and Exhibit B*

Container number TTNU9727365 was discharged at Al Aqaba, Jordan on September 28, 2009 and was made available for pick-up by the consignee. The standard notice of arrival was given to both the consignee and the notify, who in this case was also listed as the consignee. *Boose Dec. at ¶ 17* Following the expiration of the allowed free-time, MSC gave written notice to the defendant that the container had not been cleared and that MSC was holding the defendant liable for the demurrage charges that were accruing. *Boose Dec. at ¶ 17*

At the port of Al Aqaba, Jordan, MSC allows 15 days free-time. *Boose Dec. at ¶ 18* Following the expiration of free-time, MSC's tariff imposes a two tiered demurrage scheme for 40-foot high-cubed, containers: for the first 10 days on demurrage, the charge is US$10.00 per day and after that, then the charge is US$20.00 per day. *Boose Dec. at ¶ 18 and Exhibit D*  Container TTNU9727365 was returned to MSC on October 5, 2011, after the local customs authorities authorized its release.  Defendant owes MSC a total of US$14,133.00 in demurragefor this container.  *Boose Dec. at ¶ 18*


### Bill of Lading MSCULB483885 Baltimore/ Mombasa, Kenya

On or about September 15, 2009, MSC and United entered into a bill of lading contract pursuant to which MSC agreed to carry one 40-foot, high-cubed, shipping container from the port of Baltimore, Maryland to the port of Mombasa, Kenya. The agreement was memorialized in MSC bill of lading number MSCULB483885. *Boose Dec. at ¶ 19 and Exhibit E*  The cargo, which the "Shipper" (defendant, United) described as "670 BAGS: OF OF USED SECOND

HAND SHOES 2nd GRADE." was loaded into container number GSTU9751230. *Boose Dec. at ¶ 19 and Exhibit E*

Container number GSTU9751230 was discharged at Mombasa, Kenya on November 14, 2009 and was made available for pick-up by the consignee. The standard notice of arrival was given to both the consignee and the notify, who in this case was also listed as the consignee. *Boose Dec. at ¶ 19* Following the expiration of the allowed free-time, MSC gave written notice to the defendant that the container had not been cleared and that MSC was holding the defendant liable for the demurrage charges that were accruing. *Boose Dec. at ¶ 19*

At the port of Mombasa, Kenya, MSC allows 14 days free-time. *Boose Dec. at ¶ 20* Following the expiration of free-time, MSC's tariff imposes a three tiered demurrage scheme for 40-foot high-cubed, containers: for the first 7 days on demurrage, the charge is US$8.00 per day. If the equipment is not returned following the first demurrage period, then there is a second demurrage period of 7 days, during which the charge is US$20.00 per day. If the equipment is not returned following the first 28 days (14 days free-time and 14 days for the first and second demurrage periods) then the demurrage charge is US$28.00 per day. *Boose Dec. at ¶ 20 and Exhibit G* As the container is still accruing demurrage at the port of Mombasa, Kenya, MSC has calculated that as of October 24, 2011, the demurrage and charges due on container number GSTU9751230, will be US$19,203.00. *Boose Dec. at ¶ 20*

## LEGAL ARGUMENT

### A.    *Legal Standard for Summary Judgment*

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "Summary judgment is appropriate if, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *United States v. All Right, Title & Interest in Real Property, etc.,* 901 F.2d 288, 290 (2nd Cir. 1990)(citation omitted). Summary judgment may be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

The substantive law governing the case will identify the facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying which materials it believes "demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "[T]he burden on the moving party may be discharged by 'showing'- that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

In the present case, the uncontested facts are that MSC and defendant entered into a contract of carriage for the carriage of one container from Cherry Valley, Massachusetts to Vitoria, Brazil. Included by reference into that contract was MSC's tariff which provided a set period of time for the defendant, amongst others, to have the container cleared through local customs, removed from the terminal, unloaded and returned to MSC. The tariff also set demurrage rates in the event that the defendant failed to return the container. The defendant

failed to return the container and as a result became obligated to pay MSC demurrage. MSC has demanded payment and the defendant has refused to pay. Defendant has no defense to payment under the bill of lading and the tariff.

**B.**    ***The Shipper Named On The Bill Of Lading Is Responsible For Paying Demurrage***

United, as the named shipper on the bill of lading in suit, is bound by the terms and conditions of the bill of lading and is obligated to pay demurrage due under those bills of lading. *Southern Pacific Transp. v. Commercial Metals Co.,* 456 U.S. 336, 102 S. Ct. 1815, 72 L. Ed. 2d 114 (1982); See also *NPR, Inc. v. Avant Import & Export,* 1996 U.S. Dist. LEXIS 20242 (D.P.R. 1996).

The Shipping Act of 1984 as amended by the Ocean Shipping Reform Act of 1998 (hereinafter referred to as "Shipping Act") requires that an ocean common carrier collect the charges laid-out in its bill of lading and its tariff, which is required to be maintained by the ocean common carrier. *See 46 U.S.C. §41104; See also Yang Ming Marine Transport v. Okamoto Freighters Ltd.,* 259 F.3d 1086, 1093 (9th Cir. 2001)(Referring to 46 U.S.C. §1709(b)(1) an earlier form of 46 U.S.C. §41104). The Shipping Act specifically prohibits an ocean common carrier from either allowing any person to obtain transportation for less than the rates set in the carrier's tariff or from charging any amount less than the amounts set-out in the carrier's tariff:

> § 41104. Common carriers
>
> A common carrier, either alone or in conjunction with any other person, directly or indirectly, may not—
>
> **(1) allow a person to obtain transportation for property at less than the rates or charges established by the carrier in its tariff or service contract by means of false billing, false classification, false weighing, false measurement, or any other unjust or unfair device or means;**

**(2) provide service in the liner trade that is—**

**(A) not in accordance with the rates, charges, classifications, rules, and practices contained in a tariff published or a service contract entered into under chapter 405 of this title, unless excepted or exempted under section 40103 or 40501(a)(2) of this title [46 USCS § 40103 or 40501(2)]; or**

(B) under a tariff or service contract that has been suspended or prohibited by the Federal Maritime Commission under chapter 407 or 423 of this title [46 USCS §§ 40701 et seq. or 42301 et seq.];

(3) retaliate against a shipper by refusing, or threatening to refuse, cargo space accommodations when available, or resort to other unfair or unjustly discriminatory methods because the shipper has patronized another carrier, or has filed a complaint, or for any other reason;

**(4) for service pursuant to a tariff, engage in any unfair or unjustly discriminatory practice in the matter of—**

**(A) rates or charges;**

(B) cargo classifications;

**(C) cargo space accommodations or other facilities, with due regard being given to the proper loading of the vessel and the available tonnage;**

**(D) loading and landing of freight; or**

(E) adjustment and settlement of claims;

(5) for service pursuant to a service contract, engage in any unfair or unjustly discriminatory practice in the matter of rates or charges with respect to any port;

(6) use a vessel in a particular trade for the purpose of excluding, preventing, or reducing competition by driving another ocean common carrier out of that trade;

**(7) offer or pay any deferred rebates;**

(8) for service pursuant to a tariff, give any undue or unreasonable preference or advantage or impose any undue or unreasonable prejudice or disadvantage;

(9) for service pursuant to a service contract, give any undue or unreasonable preference or advantage or impose any undue or unreasonable prejudice or disadvantage with respect to any port;

(10) unreasonably refuse to deal or negotiate;

11

(11) knowingly and willfully accept cargo from or transport cargo for the account of an ocean transportation intermediary that does not have a tariff as required by section 40501 of this title [46 USCS § 40501] and a bond, insurance, or other surety as required by section 40902 of this title [46 USCS § 40902]; or

(12) knowingly and willfully enter into a service contract with an ocean transportation intermediary that does not have a tariff as required by section 40501 of this title and a bond, insurance, or other surety as required by section 40902 of this title [46 USCS § 40902], or with an affiliate of such an ocean transportation intermediary.

*(Emphasis added.)*

The front of MSC's bill of lading specifically draws the Merchant's attention to the terms and conditions that govern the contract and alert the Merchant to the existence and application of MSC's tariff:

> IN ACCEPTING THIS BILL OF LADING THE MERCHANT EXPRESSLY ACCEPTS AND AGREES TO ALL THE TERMS AND CONDITIONS, WHETHER PRINTED, STAMPED OR OTHERWISE INCORPORATED ON THIS SIDE AND ON THE REVERSE SIDE OF THIS BILL OF LADING AND THE TERMS AND CONDITIONS OF THE CARRIER'S APPLICABLE TARIFF AS IF THEY WERE ALL SIGNED BY THE MERCHANT.

*Boose Dec. at ¶ 13 and Exhibit A, on the first page of the Exhibit*

As has been outlined above, the defendant is the named "Shipper" on the bill of lading and is also included in the definition of "Merchant" in the terms and conditions of the bill of lading contract. Clause 2 of the bill of lading contract made the entities included in the definition of "Merchant" responsible for the "various undertakings, responsibilities and liabilities of the Merchant under or in connection with" the bill of lading. *See Boose Dec. at ¶ 15 and Exhibit A, Clause 2* Among the obligations that defendant agreed to undertake, under the bill of lading, was the obligation to return MSC's equipment to the place designated by MSC's agent, before the end of the allowed free-time or failing that, to pay demurrage charges due as a result. *See Boose*

12

*Dec. at ¶16 and Exhibit A at Clause 14.8*   The defendant also undertook to return MSC's equipment to the place designated by MSC or pay MSC's expenses incurred as a result of equipment that was not returned, *See Boose Dec. at ¶ 16 and Exhibit A, Clause 14.9*   The defendant agreed to take delivery of the cargo at the port of discharge within the time provided by MSC's tariff. *Boose Dec. at ¶ 16 and Exhibit A,  Clause 20.2*  Finally, the defendant agreed to indemnify MSC for all costs associated, including legal fees, "for the cleaning and disposal of Goods refused and/or abandoned by the Merchant." *Boose Dec. at ¶ 16 and Exhibit A, Clause 20.4*

C.      *Defendant Has No Valid Defense To Payment Of The Tariff Demurrage Amount*

   The typical argument against the payment of discharge port demurrage that is made by shippers is that they "didn't know" that the cargo was undelivered.  While that argument may have some appeal, at first blush, the Court should consider what business would enter into a contract, such as the MSC bill of lading, knowing the rather onerous terms and then do absolutely nothing to protect that business' interests?  The defendant never enquired about the cargo in suit until MSC gave notice that the cargo was not delivered.  As MSC is required to maintain a tariff by the Shipping Act, defendant's familiarity with the tariff terms are "conclusively presumed." *Sea-Land Service v. Murrey & Son's Co.,* 824 F.2d 740, 742-743 (9th Cir. 1978).

   The other argument generally raised by shippers when faced with a claim by an ocean common carrier for discharge port demurrage is that the ocean carrier did not adequately mitigate its damages and therefore, the carrier is not entitled to recover demurrage.  Any attempts to mitigate damages by the carrier need only be within the range of reason. *See 4-25 Goods in*

*Transit §25.01[6]*.  As the Second Circuit Court of Appeals noted in a container demurrage case,

when addressing the carrier's obligations with regard to mitigation:

> That the missteps happened is not denied; missing is an analysis of these
> shortcomings against the more forgiving standard accorded a party that
> has fully performed all of its contract obligations and is thrust into the
> shoes of the breaching party as it scrambles to mitigate the impact of the
> breach. The trial court's obligation was to determine whether the
> mitigation efforts actually chosen in those unaccustomed shoes were
> reasonable, not whether hindsight suggests that an objectively better
> choice was available.

*APL CO. PTE LTD. v. Blue Water Shipping U.S. Inc.,* 592 F.3d 108, 112 (2d Cir. 2010).

On remand, Magistrate Judge Cott noted that any enquiry as to whether the carrier's

mitigation efforts were sufficient must be made giving consideration to the defendant's post-

breach efforts toward mitigation. *APL CO. PTE LTD. v. Blue Water Shipping U.S. Inc.,* 2011

U.S. Dist. LEXIS 44627 (S.D.N.Y. April 11, 2011).  As stated in the Boose Declaration, MSC is

limited in what it can do with regard to any shipment that it carries into a foreign country by the

fact that MSC is not the owner of the cargo.   While it is almost certain that the defendant was

likewise, not the owner of the cargo, as the party that placed the carriage in motion by booking

the cargo with MSC, the defendant is in a much better position to take some step to prevent or

minimize demurrage from running.  If the defendant is not the owner of the cargo, at least the

defendant knows who the owner is.  MSC, on the other hand, only has contact with the defendant

and whatever person or persons the defendant designates on the bill of lading.


**D.     *MSC Is Entitled To Recover Legal Fees And Expenses***

MSC's bill of lading provides that MSC is entitled to recover its legal fees and expenses

that are incurred in connection with the collection of freight, charges, including demurrage

charges:

The Carrier shall be entitled to recover from the Merchant all charges, fines, costs, losses and expenses, including reasonable legal expenses and costs resulting from such action, including but not limited to any detention, demurrage and storage charges for the Goods and/or the Container.

*Boose Dec. at ¶15 and Exhibit A at Clause 14.7*

Legal fees have been held to be an exception to the American Rule that each party will be responsible for its own legal fees and expenses, where the contract of carriage provides for the payment of legal fees. *Crowley American Transport v. Richard Sewing Machine Co.,* 172 F.3d 781, 785-786 (11th Cir. 1999). In the *Crowley* case, the Eleventh Circuit ruled, in interpreting a clause similar to that before this Court, that given appropriate contractual language, the carrier is entitled to recover its legal fees and expenses in connection with an action to recover container demurrage charges. The language of Clause 14.7, as well as clauses 14.9 and 20.2 provide that MSC is entitled to recover its legal fees expended in recovering demurrage charges or in attempting to recover its equipment. MSC is entitled to recover its legal fees and expenses in this action.

## CONCLUSION

For the foregoing reasons, plaintiff, MEDITERRANEAN SHIPPING COMPANY (USA) INC., prays that this Court grant it summary judgment as to its claims arising against the defendant, WORLDWIDE FREIGHT SERVICES, INC., trading as UNITED AMERICAN LINE for the full amount of MEDITERRANEAN SHIPPING COMPANY (USA)'s claims together with an award of legal fees and expenses, as provided by the governing contracts and for such additional, further or different relief as the Court may deem just and proper.

Dated: New York, New York
       October 7, 2011

                          CARROLL McNULTY & KULL, LLC
                          *Attorneys for Plaintiff*
                          MEDITERRANEAN SHIPPING COMPANY
                          (USA) INC.


                   By:    /S/    **John A. Orzel**
                          _____

                          John A. Orzel, Esq.
                          570 Lexington Avenue, 10th Floor
                          New York, New York 10022
                          (212) 252-0004
                          jorzel@cmk.com

16