```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

MEDITERRANEAN SHIPPING COMPANY,     :
(USA) INC.,
                                    :
                  Plaintiff,            10 Civ. 9445 (HBP)
                                    :
     -against-                          OPINION
                                    :   AND ORDER
WORLDWIDE FREIGHT SERVICES, INC.,
T/A UNITED AMERICAN LINE,            :

                  Defendant.        :

----------------------------------X
```

PITMAN, United States Magistrate Judge:

## I.   Introduction

Plaintiff Mediterranean Shipping Company (USA), Inc., ("MSC") brought this action to recover demurrage and other charges which have accrued with respect to two containers MSC carried in 2009 for the benefit of defendant, Worldwide Freight Services, Inc., trading as, United American Line ("UAL") (Complaint, dated Dec. 15, 2010 (Docket Item 1) passim).  MSC also seeks to recover its legal fees (Complaint ¶ 27).  The parties consented to my exercising plenary jurisdiction pursuant to 28 U.S.C. § 636(c).  Federal jurisdiction is based on 28 U.S.C. § 1333.

By notice of motion dated October 7, 2011 (Docket Item 12), MSC moves for summary judgment.  For the reasons set forth below, MSC's motion is granted with respect to demurrage charges and pre-judgment interest and is denied with respect to all other charges.

II.   <u>Facts</u>

MSC has submitted a statement of undisputed facts pursuant to Local Civil Rule 56.1 which it contends have been established either through documentary evidence or by a declaration submitted in connection with its motion[1] (Plaintiff's Rule 56.1 Statement of Uncontested Facts, dated Oct. 7, 2011 (Docket Item 18)("Pl.'s 56.1 St.")).

UAL has failed to submit its own 56.1 statement.  Accordingly, the facts set forth in Pl.'s 56.1 St. are deemed admitted.  <u>Pearson v. Lynch</u>, 10 Civ. 5119 (RJS), 2012 WL 983546 at *1 n.1 (S.D.N.Y. Mar. 22, 2012) (Sullivan, D.J.), <u>citing</u> Local Civ. R. 56.1(c), <u>and</u> <u>Gitlow v. United States</u>, 319 F. Supp. 2d

---

[1] Some facts below are drawn directly from the Declaration of Jorge Boose, dated Oct. 7, 2011 and attached exhibits. Although it appears that the Boose Declaration was never filed on the Court's docket, the defendant references it in his affidavit in opposition (Docket Item 21 at ¶ 10) and a courtesy copy was provided to my chambers.  Accordingly, I consider the Boose Declaration as if it had been properly filed on the Court's docket and part of the record in this matter.

478, 480 (S.D.N.Y. 2004) (Kaplan, D.J.).  Nevertheless, MSC must still show that it is entitled to judgment as a matter of law based on evidence in the record.  Holtz v. Rockefeller & Co., 258 F.3d 62, 74 (2d Cir. 2001).

A.   Background

MSC is a New York company which acts on behalf of its principal, Mediterranean Shipping Company of Geneva, SA, a Swiss entity, to book cargo for carriage originating in the United States and to collect demurrage that has accrued on containers that were used for such shipments (Pl.'s 56.1 St. at ¶¶ 1-2, citing Declaration of Jorge Boose, dated Oct. 7, 2011 ("Boose Decl.") ¶ 3).

MSC, together with its principal, carries containerized cargo pursuant to a standard form bill of lading that includes terms and conditions on the back side of the bill of lading and in MSC's tariff, which is maintained with the Federal Maritime Commission and incorporated by reference in the bill of lading (Pl.'s 56.1 St. at ¶ 5, citing Boose Decl. ¶¶ 11-12 & Exhibit A).

Shippers of cargo with MSC have a fixed number of days to use and return MSC's container, known as "free-time"; if a shipper fails to return MSC's container within the free-time, MSC

will charge the shipper a fee for demurrage (Pl.'s 56.1 St. at ¶¶
3-4, <u>citing</u> Boose Decl. ¶ 6).

    B.   <u>Shipment to Jordan</u>

       MSC carried a 40-foot high-cubed shipping container
bearing a registration number TTNU9727365 ("Container '365"),
pursuant to bill of lading number MSCUNQ619164, from New York
City to Al Aqaba, Jordan, on August 16, 2009 (Pl.'s 56.1 St. at ¶
6, <u>citing</u> Boose Decl. ¶¶ 16-17; Exhibit B to Boose Decl.).  UAL
is listed as the shipper on the bill of lading (Pl.'s 56.1 St. at
¶ 7, <u>citing</u> Exhibit B to Boose Decl.).

       Container '365 was discharged in Jordan on September
28, 2009 and notice of arrival was given to the consignee who was
listed on the bill of lading as the party to be notified when the
container arrived at the destination port (Pl.'s 56.1 St. at ¶ 9;
Boose Decl. ¶ 16).  When Container '365 was not cleared during
the allowed free-time, MSC contacted UAL at some point prior to
June 18, 2010 (Boose Decl. ¶ 16).  MSC also contacted UAL after
June 18, 2010 by email, and by Certified Mail on October 29, 2009
and February 11, 2010 (Boose Decl. ¶ 16 & Exhibit C).  Container
'365 remained at the port in Jordan until MSC was notified by the
"local authorities," on October 5, 2011, that the container had
been emptied and the contents disposed of; MSC was not informed

as to the actual disposition of the cargo (Pl.'s 56.1 St. at ¶ 10; Boose Decl. ¶¶ 7, 16).

MSC's tariff governing the use of its equipment at Al Aqaba, Jordan provided for 15 days of free-time for a container the size of Container '365, followed by demurrage at a rate of $10 per day for the first 10 days and $20 for each day thereafter (Pl.'s 56.1 St. at ¶ 11, <u>citing</u> Boose Decl. ¶ 17 & Exhibit D). As a result of UAL's failure to return Container '365 to MSC during the allowed free-time, MSC seeks $14,340 in demurrage charges,[2] $50 for a "MSC administrative fee," $190 for "customs inspection," and $250 for "trucking/devanning"[3] (Pl.'s 56.1 St. at ¶ 12; Boose Decl. ¶ 17 & Exhibit D).

C.   <u>Shipment to Kenya</u>

MSC also carried a 40-foot high-cubed shipping container bearing a registration number GSTU9751230 ("Container '230"), pursuant to bill of lading number MSCULB483885, from Baltimore, Maryland to Mombasa, Kenya, on September 15, 2009 (Pl.'s 56.1 St. at ¶ 6, <u>citing</u> Boose Decl. ¶¶ 18-19; Exhibit E to

---

[2] 10 days at $10 per day and 712 days at $20 per day.

[3] Pl.'s 56.1 statement is inconsistent with the Boose Decl. in the exact amount MSC seeks with respect to Container '365. I use the amounts listed in the Boose Decl. at ¶ 17.

Boose Decl.).  UAL is listed as the shipper on the bill of lading (Pl.'s 56.1 St. at ¶ 7, _citing_ Exhibit E to Boose Decl.).

Container '230 was discharged in Kenya on November 14, 2009 and notice of arrival was given to the consignee who was listed on the bill of lading as the party to be notified when the container arrived at the destination port (Boose Decl. ¶ 18). When Container '230 was not cleared during the allowed free-time, MSC contacted UAL at some point prior to June 18, 2010 (Boose Decl. ¶ 18).  MSC also contacted UAL after June 18, 2010 by email, and by Certified Mail on January 11, 2010 and February 12, 2010 (Boose Decl. ¶ 18 & Exhibits C and F).  At the time this motion was filed, Container '230 remained unclaimed at the port in Kenya (Boose Decl. ¶¶ 7, 18).

MSC's tariff governing the use of its equipment at Mombasa, Kenya provided for 14 days of free-time for a container the size of Container '230, followed by demurrage at a rate of $8 per day for the first 7 days, $20 per day for the next 7 days, and $28 for each day thereafter (Boose Decl. ¶ 19 & Exhibit G). As a result of UAL's failure to return Container '230 to MSC during the allowed free-time, MSC seeks $19,264 in demurrage

charges,[4] and $135 for a "terminal handling charge Mombasa"[5] (Pl.'s 56.1 St. ¶ 15; Boose Decl. ¶ 19 & Exhibit G).

    D.    <u>Bill of Lading Terms</u>

       The uniform set of terms and conditions which govern the relationship between MSC and a merchant who utilizes its shipping services appear on the reverse side of MSC's form bill of lading (Boose Decl. ¶ 12).

       MSC's bill of lading defines the term "merchant" to include the shipper (Boose Decl. ¶ 13 & Exhibit A § 1).  MSC's bill of lading provides that "merchants" are jointly and sever-ally liable for the charges and undertakings due under the bill of lading:

> 2. Contracting Parties and Warranty:
>
> The contract evidenced by this Bill of Lading is be-tween the Carrier and the Merchant.  Every Person defined as "Merchant" is jointly and severally liable towards the Carrier for all the various undertakings, responsibilities and liabilities of the Merchant under or in connection with this Bill of Lading and to pay the Freight due under it without deduction or set-off. The Merchant warrants that in agreeing to the terms and conditions in this Bill of Lading, he is the owner of the Goods or he does so with the authority of the owner

---

    [4] 7 days at $8 per day, 7 days at $20 per day, and 681 days at $28 per day.

    [5] Pl.'s 56.1 statement is inconsistent with the Boose Decl. in the exact amount MSC seeks with respect to Container '230.  I use the amounts listed in the Boose Decl. at ¶ 19.

of the Goods or of the Person entitled to the posses-
sion of the Goods or of this Bill of Lading.

(Boose Decl. ¶ 14 & Exhibit A § 2).

MSC's bill of lading also provides that:

The Carrier allows a period of free time for the use of
the Containers and other equipment in accordance with
the Tariff and as advised by the local MSC agent at the
Ports of Loading and Discharge.  Free time commences
from the day the Container and other equipment is . . .
discharged from the Vessel or is delivered to the Place
of Delivery . . . .  The Merchant is required and has
the responsibility to return to a place nominated by
the carrier the Container and other equipment before or
at the end of the free time allowed at the Port of
Discharge or the Place of Delivery.  Demurrage, per
diem and detention charges will be levied and payable
by the Merchant thereafter in accordance with the
Tariff.

(Boose Decl. ¶ 15 & Exhibit A § 14.8).  MSC's bill of lading

further states that "[t]he Merchant shall take delivery of the

Goods within the time provide[d] for in the Carrier's Tariff or

as otherwise agreed" (Boose Decl. ¶ 15 & Exhibit A § 14.8).[6]

------

[6] The bill of lading also defines "freight" as "includ[ing]
the freight and all charges, costs and expenses whatsoever
payable to the Carrier in accordance with the applicable Tariff
and this Bill of Lading, including storage, per diem and
demurrage," and, as a "merchant," the shipper is required to pay
the full amount of freight under the contract (Boose Decl.
Exhibit A §§ 2, 11, 20).

8

E.   Plaintiff's Claims
     and Defendant's Arguments

        MSC contends that it is entitled to summary judgment
because, under the bills of lading at issue, UAL, as the shipper,
is liable for demurrage and other expenses MSC incurred in
connection with UAL's delay in clearing, emptying, and returning
the containers to MSC.

        UAL does not dispute the fact that MSC shipped the
containers and that the containers were never retrieved from the
ports.  Rather, UAL contends that: (a) there was no harm to
plaintiff because MSC could have replaced the containers with
others in its shipping system and MSC is "attempting to [ ]
create a windfall profit by relying on the fine print in its bill
of lading," (b) UAL, as a ocean transport intermediary, has no
ownership interest in the goods, (c) UAL had no right or author-
ity to dispose of the cargo and return the empty container to
MSC, (d) UAL was acting as an agent for a disclosed principal,
(e) MSC substantially delayed the liquidation of the cargo in
Jordan, (f) plaintiff has provided no evidence that it is fault
free, (g) UAL should not be responsible for the wrongful acts of
the consignee, and (h) substantial issues of material fact exist
including the facts surrounding the delay in devanning the cargo
in Jordan and Kenya (Affidavit of Mohammad Tahir in Opposition to

Plaintiff's Motion for Summary Judgment, sworn to on Nov. 11, 2011 (Docket Item 21) ("Tahir Aff.") at ¶¶ 5-18).

III. <u>Analysis</u>

A.    <u>Summary Judgment Standards</u>

The standards applicable to a motion for summary judgment are well-settled and require only brief review.

> Summary judgment shall be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). This form of relief is appropriate when, after discovery, the party -- here plaintiff -- against whom summary judgment is sought, has not shown that evidence of an essential element of her case -- one on which she has the burden of proof -- exists. <u>See</u> <u>Celotex Corp.</u> <u>v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This form of remedy is inappropriate when the issue to be resolved is both genuine and related to a disputed material fact. An alleged factual dispute regarding immaterial or minor facts between the parties will not defeat an otherwise properly supported motion for summary judgment. <u>See</u> <u>Howard v.</u> <u>Gleason Corp.</u>, 901 F.2d 1154, 1159 (2d Cir. 1990). Moreover, the existence of a mere scintilla of evidence in support of nonmovant's position is insufficient to defeat the motion; there must be evidence on which a jury could reasonably find for the nonmovant. <u>Anderson</u> <u>v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

> If the movant demonstrates an absence of a genuine issue of material fact, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts," and come forward with "specific facts showing that there is a genuine issue for trial." <u>Aslanidis v.</u> <u>United States Lines, Inc.</u>, 7 F.3d 1067, 1072 (2d Cir.

> 1993).  If the nonmovant fails to meet this burden,
> summary judgment will be granted against it.  <u>Gallo v.
> Prudential Residential Servs.</u>, 22 F.3d 1219, 1224 (2d
> Cir. 1994).

<u>Powell v. Nat'l Bd. of Med. Exam'rs</u>, 364 F.3d 79, 84 (2d Cir.

2004); <u>accord</u> <u>Jeffreys v. City of N.Y.</u>, 426 F.3d 549, 553-54 (2d

Cir. 2005); <u>Gallo v. Prudential Residential Servs.</u>, 22 F.3d 1219,

1223-24 (2d Cir. 1994).

    "Material facts are those which 'might affect the

outcome of the suit under the governing law,' and a dispute is

'genuine' if 'the evidence is such that a reasonable jury could

return a verdict for the nonmoving party.'" <u>Coppola v. Bear

Stearns & Co.</u>, 499 F.3d 144, 148 (2d Cir. 2007), <u>quoting</u> <u>Anderson

v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>accord</u> <u>McCarthy

v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 202 (2d Cir. 2007).

"'[I]n ruling on a motion for summary judgment, a judge must ask

himself not whether he thinks the evidence unmistakably favors

one side or the other but whether a fair-minded jury could return

a verdict for the [non-movant] on the evidence presented[.]'"

<u>Cine SK8, Inc. v. Town of Henrietta</u>, 507 F.3d 778, 788 (2d Cir.

2007), <u>quoting</u> <u>Readco, Inc. v. Marine Midland Bank</u>, 81 F.3d 295,

298 (2d Cir. 1996).

> The party seeking summary judgment has the burden to
> demonstrate that no genuine issue of material fact
> exists . . . . In determining whether a genuine issue
> of material fact exists, a court must examine the

> evidence in the light most favorable to, and draw all
> inferences in favor of, the non-movant . . . . Stated
> more succinctly, "[t]he evidence of the non-movant is
> to be believed."

Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 253-54 (2d Cir.
2002) (citations omitted); see also Jeffreys v. City of N.Y.,
supra, 426 F.3d at 553 ("'Assessments of credibility and choices
between conflicting versions of the events are matters for the
jury, not for the court on summary judgment.'"), quoting Rule v.
Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996); accord Make the
Road by Walking, Inc. v. Turner, 378 F.3d 133, 142 (2d Cir.
2004); Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780
(2d Cir. 2003).

        "In moving for summary judgment against a party who
will bear the ultimate burden of proof at trial, the movant may
satisfy [its] burden by pointing to an absence of evidence to
support an essential element of the nonmoving party's claim."
Vann v. City of N.Y., 72 F.3d 1040, 1048 (2d Cir. 1995).  "A
defendant moving for summary judgment must prevail if the plain-
tiff fails to come forward with enough evidence to create a
genuine factual issue to be tried with respect to an element
essential to its case."  Allen v. Cuomo, 100 F.3d 253, 258 (2d
Cir. 1996).

Finally, the Court of Appeals for the Second Circuit has explained that "in determining whether the moving party has met [its] burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement.  It must be satisfied that the citation to evidence in the record supports the assertion." Vt. Teddy Bear Co. v.  1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see also Giannullo v. City of N.Y., 322 F.3d 139, 140-43 (2d Cir. 2003). Even where, a summary judgment motion is unopposed, the Court must examine the record to determine whether a genuine issue of fact exists for trial; a summary judgment motion cannot be granted on default.  Vt. Teddy Bear Co. v. 1-800 Beargram Co., supra, 373 F.3d at 244.

### B.   Plaintiff's Claims for Demurrage

There is no material issue of fact with regard to MSC's claims for demurrage.  There were two contracts between the parties which consisted of the bills of lading and the tariffs which were expressly incorporated into the contracts.  See Mo. Pac. R.R. Co. v. Elmore & Stahl, 377 U.S. 134, 144 (1964) ("The shipping contact consists of the bill of lading and applicable tariffs lawfully published and filed, from which there nay be no

departure.") (internal citations omitted) (Douglas, J., dissent-
ing); accord Orient Overseas Container Line Ltd. v. Crystal Cove
Seafood Corp., 10 Civ. 3166 (PGG), 2012 WL 463927 at *12
(S.D.N.Y. Feb. 14, 2012) (Gardephe, D.J.); Mediterranean Shipping
Co. (USA) v. Cargo Agents, Inc., 10 Civ. 5070 (THK), 2011 WL
6288422 at *4 (S.D.N.Y Dec. 15, 2011) (Katz, M.J.).  The con-
tracts between the parties were clear and unambiguous. UAL, as
the shipper, was a "merchant" under the contracts (Exhibit A to
Boose Decl. at § 1).  As a merchant, UAL warranted that it was
"the owner of the [g]oods" or acted "with the authority of the
owner," and UAL agreed to be jointly and severally liable for all
"undertakings, responsibilities and liabilities" including paying
freight and demurrage charges (Exhibit A to Boose Decl. at §§ 2,
14, 16, 20).

        "Demurrage is a standard fee associated with shipping
through common carriers; so much so that courts have found it to
be an implied term in maritime contracts." Mediterranean Ship-
ping Co. (USA) v. Cargo Agents, Inc., supra, 2011 WL 6288422 at
*4, citing Safmarine v. Columbia Container Lines (USA), Inc., 10
Civ. 1825 (KAM), 2010 WL 7134001 at *3 (E.D.N.Y. Dec. 15, 2010)
("The [] obligation, 'to remove the goods within a reasonable
time and not to appropriate the space needed by the ship company

14

for other cargo,' is [] an implied term in the maritime contract and falls on the shipper or consignee." (citations omitted)).

> Any risk that prevents the discharge of cargo during the stipulated freetime "should be borne by the cargo interest, shipper or consignee, as the case may be." [Gulf P.R. Lines, Inc. v. Assoc. Food Co., 366 F. Supp. 631, 635 (D.P.R. 1973) ("Puerto Rico")] (citing Yone Suzuki v. Cent. Argentine Ry., 27 F.2d 795, 804 (2d Cir. 1928); The Marpesia, 292 F. 957, 969 (2d Cir. 1923)).

Safmarine v. Columbia Container Lines (USA), Inc., supra, 2010 WL 7134001 at *3.  Thus, plaintiff is not attempting to reap a "windfall profit" based on "fine print"; rather, it is only attempting to collect fees to which it is entitled under a "long-standing industry practice and the terms of its agreement." Mediterranean Shipping Co. (USA) v. Cargo Agents, Inc., supra, 2011 WL 6288422 at *4.

UAL's contentions that MSC delayed the liquidation of the cargo in Jordan and that it provided no evidence that it is fault free in the matter are also meritless.  Such contentions are no more than conjecture and do not create disputes about material issues of fact.  Mediterranean Shipping Co. (USA) v. Cargo Agents, Inc., supra, 2011 WL 6288422 at *5.

UAL's other purported disputes of fact are also meritless.  Any questions regarding the delay in devanning the cargo in Jordan and Kenya are immaterial to MSC's claims for

demurrage.  <u>Mediterranean Shipping Co. (USA) v. Cargo Agents,</u>
<u>Inc.</u>, <u>supra</u>, 2011 WL 6288422 at *5.  Under the contracts, UAL was
responsible for unloading the containers and returning them to
MSC during the free-time and it agreed to be liable for any
demurrage charges.  It simply makes no difference, with respect
to UAL's contractual obligations, that UAL had no ownership
interest in the goods, that UAL purportedly did not have the
authority to dispose of the goods, that it was acting as an
intermediary, or that the consignees wrongfully failed to pickup
the goods.  UAL is still liable to MSC for the resulting demur-
rage charges.[7]

　　　　Accordingly, I find that MSC is entitled to summary
judgement on its claims for demurrage.

　　　C.　<u>Damages</u>

　　　　With respect to Container '365, MSC seeks $14,340 in
demurrage charges and $490 in other administrative fees and, with
respect to Container '230, MSC seeks $19,264 in demurrage charges
and $135 in other administrative fees (Boose Decl. ¶¶ 17, 19).

---

　　　　[7] UAL also claims that it is entitled to a set-off if MSC
received proceeds from the liquidation of the goods in Jordan;
however, MSC did not receive any such proceeds (<u>see</u> Boose Decl. ¶
7).

UAL argues that MSC did not actually suffer a loss due to the unavailability of the two shipping containers.  This argument is unavailing:

> Demurrage is an accepted form of liquidated damages in shipping, see Ocean Transp. Line v. AM. Philippine Fiber Ind., 743 F.2d 85, 90 (2d Cir. 1984); see also Toyomenka Pacific Petroleum, Inc. v. Hess Oil Virgin Islands Corp., 771 F. Supp. 63, 69 (S.D.N.Y. 1991) ("Demurrage has sometimes been described as stipulated damages for detention.") (internal citations omitted), and in any event, Plaintiff is not allowed to deviate from its published tariff.  See 46 U.S.C. § 41104. While Plaintiff must show actual loss, that inquiry is not used as the measure of damages where the contract provides for a reasonable demurrage fee.  See Marin Tug & Barge, Inc. v. Westport Petroleum, Inc., 1 Fed. App'x 757, 759 (9th Cir. 2001) ("[T]he mere stipulation of a liquidated sum for demurrage [does not] obviat[e] the need to show actual damages.  At the same time, the requirement of proving actual damages does not vitiate the [stipulated] demurrage rate . . . unless such a rate is so excessive that it constitutes a penalty.") (alterations in original) (internal quotations and citations omitted).  This rule has been established since the earliest days of federal admiralty jurisprudence.  See, e.g. The Apollon, 9 Wheat. 362, 22 U.S. 362, 378, 6 L.Ed. 111 (1824) ("In truth, demurrage is merely an allowance or compensation for the delay or detention of a vessel.  It is often a matter of contract, but not necessarily so.").  In other words, once a plaintiff has demonstrated that there has been loss, that is, the loss of the use of a container, the amount of loss is measured by the demurrage rate.

Mediterranean Shipping Co. (USA) v. Cargo Agents, Inc., supra, 2011 WL 6288422 at *5.[8]

---

[8] UAL also argues that MSC's damages are "illusory" as evidenced by its offer of a 40% reduction in charges to settle

(continued...)

Accordingly, MSC is awarded $33,604 in demurrage charges.  This figure is based on plaintiff's supporting declaration and the printouts of the relevant tariffs (Boose Decl. 17, 19 & Exhibits D, G).

To the extent MSC seeks other administrative fees, its motion is denied.  Although other fees are contemplated by the bills of lading, these fees are not specifically delineated in the bills of lading and are not listed in the tariffs provided. No invoices for such fees are provided and MSC's declaration in support of its motion does not adequately describe the nature and circumstances surrounding these fees.  Accordingly, I do not find sufficient proof regarding these fees to award them as a matter of law.

D.    <u>Interest</u>

Plaintiff also seeks an award of interest on its damages.

"Although it is an abuse of discretion to deny prejudgment interest in admiralty cases except under

---

[8](...continued)
the matter (Tahir Aff. ¶ 13).  Such evidence is immaterial to plaintiff's claims and is inadmissable under Fed.R.Evid. 408. Furthermore, although reductions in demurrage charges are not normally allowed, <u>see</u> 46 U.S.C. § 41102, 41104, a relatively inexpensive procedure can be used to waive a portion of demurrage charges, <u>see</u> 46 C.F.R. § 502.271.

extraordinary circumstances, the district court has
broader discretion to determine when interest commences
and what rate of interest to apply."  <u>Independent Bulk</u>
<u>Transport, Inc. v. Vessel Morania Abaco</u>, 676 F.2d 23,
25 (2d Cir. 1982) (internal citation omitted).  In
admiralty, interest is meant to be solely compensatory.
<u>See</u> <u>New York Marine & Gen. Ins. Co. v. Tradeline</u>
<u>(L.L.C.)</u>, 266 F.3d 112, 131 (2d Cir. 2001); <u>O'Brien</u>
<u>Bros. v. The Helen B. Moran</u>, 160 F.2d 502, 506. (2d
Cir. 1947).

<u>Mediterranean Shipping Co. (USA) v. Cargo Agents, Inc.</u>, <u>supra</u>,
2011 WL 6288422 at *6.

Because interest is meant to be compensatory, and
Mediterranean will be sufficiently compensated through its
demurrage award for the lost use of its shipping containers, I
conclude that, with respect to Container '365, interest should
commence on October 5, 2011, the day it recovered Container '365,
and run until the entry of judgment.  With respect to Container
'230, interest should commence on October 24, 2011, the last day
this Order awards MSC demurrage charges, and run until the entry
of judgment.  The interest rate will be based on the average
4-Week Treasury Bill rate for that time period.  <u>See</u> <u>Mediterra-</u>
<u>nean Shipping Co. (USA) v. Cargo Agents, Inc.</u>, <u>supra</u>, 2011 WL
6288422 at *6, <u>citing</u> <u>N.Y. Marine & Gen. Ins. Co. v. Tradeline</u>
<u>(L.L.C.)</u>, <u>supra</u>, 266 F.3d at 131 ("Interest is intended to make
the injured party whole . . . and generally should be measured by
interest on short-term, risk-free obligations.") (internal

19

quotation marks and citations omitted), and Dessert Serv., Inc.
v. M/V MSC Jamie/Rafaela, 219 F. Supp. 2d 504, 509 (S.D.N.Y.2002)
("The T-bill rate more closely parallels the income the damages
would have earned in a short-term, risk-free investment." (cita-
tion omitted)).

  E. Attorneys' Fees and Costs

   MSC also seeks attorneys' fees and costs related to its
claims.  Although the contracts in this case provide that attor-
neys' fees and costs are recoverable, plaintiff's counsel has
submitted no time records reflecting the work for which they seek
fees or evidence of their hourly rate or costs.  Accordingly,
MSC's application for fees and costs is denied.  See
Mediterranean Shipping Co. (USA) v. Cargo Agents, Inc., supra,
2011 WL 6288422 at *7, citing Scott v. City of N.Y., 626 F.3d
130, 133 (2d Cir.2010), and N.Y. State Ass'n for Retarded Chil-
dren v. Carey, Inc., 711 F.2d 1136 (2d Cir. 1983).

  IV. Conclusion

   Accordingly, for all the foregoing reasons, plaintiff's
motion for summary judgement is granted with respect to demurrage
charges and pre-judgment interest and is denied with respect to
all other charges.  MSC is directed to advise me within fourteen

(14) days whether it wishes to pursue its claims for administrative fees and attorneys' fees.  If MSC elects to forego these other fees, the Clerk will be directed to enter judgment against defendant for demurrage charges in the amount of $14,340 plus interest calculated at the average 4-Week Treasury Bill rate for the period between October 5, 2011 and the date of judgment and in the amount of $19,264 plus interest calculated at the average 4-Week Treasury Bill rate for the period between October 24, 2011 and the date of judgment.

Dated:   New York, New York
         August 29, 2012

                              SO ORDERED


                              _____
                              HENRY PITMAN
                              United States Magistrate Judge


Copies transmitted to:

John A. Orzel, Esq.
Carroll, McNulty & Kull
570 Lexington Avenue
8th Floor
New York, New York 10022

Ronald Saffner, Esq.
377 Rector Place
Suite 5B
New York, New York 10956